EDWARD KNOTT and Others v. L. MONTGOMERY and Another.

February 1, 1899.

Nos. 11,315—(71).

**Evidence—Letters Admissible—Modification of Contract of Sale.**

> *Held*, that certain letters offered in evidence by the plaintiffs, and excluded by the court, were admissible to show that the plaintiffs' claim as to the terms of the parol contract between the parties was more reasonable than the terms thereof claimed by the defendants.

Action in the district court for Lyon county to recover upon three promissory notes given by defendants to plaintiffs. The answer alleged that the notes were given in consideration of the sale of a stallion, and contained a counterclaim for damages sustained by reason of plaintiffs' alleged agreement to take back the stallion and return the notes in case he was not satisfactory. The case was tried before Webber, J., and a jury, which rendered a verdict in favor of defendants for $75. From an order denying a motion for a new trial, plaintiffs appealed. Reversed.

*M. E. Mathews*, for appellants.

*Seward & Burchard*, for respondents.

BUCK, J.

From the pleadings and evidence it appears that on March 28, 1891, these plaintiffs sold to the defendants a breeding stallion for the agreed price of $1,400, on a warranty in writing set forth in the defendants' answer. As evidence of the consideration, the defendants gave to the plaintiffs four notes, three of which are sued upon in this action, and the other was for the sum of $300 and interest, due October 1, 1892. The stallion was not satisfactory to the defendants, and on December 27, 1892, the parties entered into a new parol agreement, whereby it was agreed that the defendants should have one-half of the $300 note due October 1, 1892, and one year's interest on the other three notes, and the plaintiffs agreed to pay or deduct one-half of said $300 note, and also pay or deduct one year's interest on the other three notes, described in the complaint. The parties made all deductions as agreed upon, and the

$300 note due October 1, 1892, was canceled and mailed to the defendants.

The defendants claim that, as part of the said agreement made on December 27, 1892, the plaintiffs agreed to allow the defendants to use and retain said stallion for breeding purposes during the breeding season of the year 1893, and, in case he was not satisfactory to the defendants during said season for such purpose, then in that case the plaintiffs would take back said stallion, and cancel and return to the defendants the three notes described in the complaint. This the plaintiffs deny, and claim that by the said agreement they were released from the warranty, and from their obligation to take back the horse, and that their duty and obligation ended when they paid or deducted one-half of one note and one year's interest on the other three. It is conceded by each party that this was the only question of fact for the jury to try and determine, and upon this question the jury found in favor of the defendants.

The errors complained of by the appellants are that certain letters written by the defendants, and offered in evidence by the plaintiffs, were rejected by the court, and that, if these letters had been admitted, their contents would have tended to show that plaintiffs' contention as to the terms of the contract was more reasonable than that of the defendants. The defendants were sworn, and testified in their own behalf, and supported the claim made by them in their answer. The defendants, in their answer, admit that they purchased the horse as a sure foal getter, and that, after using him during the season of 1892 for that purpose, they knew that he did not prove to be such; and with this knowledge they allege that, after the first note of $300, maturing October 1, 1892, had become due, they, on December 27, compromised and settled all claims growing out of said sale and warranty, and entered into a new contract, as above described by them, and with this knowledge they, as part of said agreement, did retain said horse for said use during the breeding season of 1893; but that he did not during said season prove to be a good and satisfactory foal getter, of which fact they notified the plaintiffs after the breeding season of 1893, and that the horse was worthless for breeding purposes, and requested

plaintiffs to take him back, and surrender the three notes. The horse died October 3, 1894, but his death, either as to time or cause, is not material as to the rights of the parties hereto, as the rights and obligations of the parties had become fixed before that time.

There cannot be any doubt but that the question of whether defendants had a right to return the horse because he was not a sure foal getter, during the season of 1893, was one of the principal questions involved in the litigation between the parties under the new contract, as well as the question of payment of or return of the notes. The defendants, for the purpose of showing the reasonableness of their claim in the new contract, offered evidence tending to show that, during the breeding season of 1893, the horse was not a reasonably sure foal getter, which was objected to by plaintiffs. This evidence covered a period commencing in the spring of 1891, a short time subsequent to the sale of the horse, to some time in 1894; and yet the court excluded a certain letter dated November 15, 1892, written by the defendants to the plaintiffs, where they stated that they were pleased with the horse, although he did not prove to be a sure foal getter, as warranted. They also stated that the horse's leg was worse, but that they would pay plaintiffs as soon as they could collect the money for the services of the horse. December 5, 1892, defendants wrote a letter (Exhibit 18) to plaintiffs, saying that, if the latter would make a reasonable deduction for the sore on the horse's leg, they would settle. No complaint was made in this letter that the horse was not a sure foal getter, although it was a year and a half after the breeding season of 1891, when they first used the horse for breeding purposes. Their only complaint related to the sore leg of the horse.

Plaintiffs offered in evidence Exhibit 4, dated January 17, 1894, to show that this was the first time defendants had claimed a different understanding regarding the terms of the second contract, and this only an intimation to that effect. Plaintiffs then offered in evidence Exhibit 5, to show that the defendants never made the second contract they claim to have made December 27, 1892, and to show that their present contention is inconsistent with the testimony given in court, and not consistent with the contract claimed by the defendants. This letter was written in answer to Exhibit

22, wherein Mr. Knott asks Mr. Reid what is meant by Montgomery writing that no money would be paid on the horse, and states that he is getting the bank to carry the note to help the defendants; that it makes no difference to him what the horse has done, and that he has settled with them so far as the horse is concerned. Mr. Reid was called upon, by Exhibit 22, to answer those questions and suggestions, and, by Exhibit 5, he shows that the horse has not done well, and that times are very close, and people are so mad and disgusted with the horse that if you ask them for money they fly at you as though they were going to eat you; that he went out one day to collect money for the defendants, drove all day, and got two notes of $10 each. Then he says:

"I do not know what Montgomery said in his letter, but if it was saucy you can see he has reason to be cranky. He goes for me wild, and says if he had had his way he would have exchanged horses last year. * * * So, with a big note due on one side, and people mad on the other, it is pretty hard to know what to say, as I cannot raise the money myself, for I had my house burned about two months ago, with almost everything in it. * * * I think, if I could see you for a few minutes, I could fix things to suit both parties."

It is to be noted that in his letter there is no offer to return the horse, or any claim that defendants had a right to return him under the new contract, or that they refused to pay the notes.

These exhibits were all excluded by the court, and we think this was error. As the court had admitted defendants' evidence, covering a period during all the time stated in these letters, and many prior months, that the horse was not a sure foal getter, for the purpose of showing that defendants' claim was more reasonable as to the terms of the new contract than that of the plaintiffs, the latter were entitled to meet it by evidence to the contrary, and the contents of those letters we think tended to do so, and they were admissible in evidence, and their contents, and the weight thereof, as evidence proper to be submitted to and passed upon by the jury.

Order reversed, and a new trial granted.